IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES EDWARD LAWERY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:17-cv-204-TFM |
| ) | [wo] |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION

Plaintiff James E. Lawery, ("Plaintiff or Lawery") protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on February 8, 2013, alleging an onset date of December 1, 2011. (Tr. 97, 225-32). Lawery's applications were denied and he timely requested a hearing. (Tr. 173-85). On July 9, 2014, a hearing was held before Administrative Law Judge ("ALJ"), Ricky V. South. (Tr. 112-50). The ALJ denied benefits in a decision dated October 22, 2014. (Tr. 94-111). Lawery requested review of the ALJ's decision, and filed a supporting brief with the Appeals Council. (Tr. 8, 313-18). When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court **AFFIRMS** the Commissioner's decision denying

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

supplemental security income and disability benefits.

## I. STANDARD OF REVIEW

Lawery seeks judicial review of the Commissioner of Social Security Administration's decision denying his application for disability insurance benefits and supplemental security income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. In review of a social security case, the court will use the substantial evidence standard to affirm the Commissioner's decision if substantial evidence exists to support the decision. *Mitchell v. Commissioner,* 771 F.3d 780, 781 (11th Cir. 2014) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The court is limited in its review, therefore the court is "preclude[d] [from] deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1986)). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*); *Moreno v. Astrue,* 366 Fed. Appx. 23, 26-27 (11th Cir. 2010) ("failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (Citation omitted).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (Citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520;[4] *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456 (11th Cir. June 10, 2015). The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;[5]

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

---

[4] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or call a vocational expert. *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.* Otherwise, the ALJ may use a vocational expert. *Id.* A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id.* In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190

---

[6] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

### III. BACKGROUND AND PROCEEDINGS

On October 22, 2014, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. (Tr. 94-111). The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2016. (Tr. 99). The ALJ found Plaintiff had not engaged in substantial gainful activity since December 1, 2011, the alleged disability onset date. (Tr. 99). The ALJ found Plaintiff had the following severe impairments: arthritis (hip and ankle) and diabetes. (Tr. 99-101). The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the regulations for presumptive disability. (Tr. 101). The ALJ determined that Plaintiff had the RFC to perform a reduced range of light work. (Tr. 101-05). The ALJ then found, based on the VE's testimony, that Plaintiff could perform other work that exists in significant numbers in the national economy, considering his age, education, work experience, and RFC. (Tr. 105-06). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 107). Plaintiff appealed the ALJ's decision to the Appeals Council and his request for review was denied in a letter dated June 23, 2016. (Tr. 1-4). Thus, Plaintiff exhausted all his administrative remedies and now appeals the Commissioner's final decision.

### IV. STATEMENT OF FACTS

Plaintiff alleges disability due to arthritis in both legs and Type II diabetes. (Tr. 263). Plaintiff was 44 years old on his alleged disability onset date and 46 years old on the date of the ALJ's decision. (Tr. 105, 107, 251). He has an eleventh grade education, can communicate in English, and has past relevant work as a cook and industrial cleaner. (Tr. 105, 143-44, 262-64).

The ALJ found that as a result of Lawery's "severe" impairments of arthritis and diabetes that he could return to a reduced range of light work as follows:

> [Lawery] can lift/carry occasionally 20 pounds or less. He can occasionally push/pull bilaterally with the upper and lower extremity. He can sit/stand (every 30 minutes). The claimant can occasionally stoop, balance, kneel, crouch, and crawl. He is never to climb ladders, ropes or scaffolds. The claimant can frequently perform overhead reaching bilaterally. He requires a cane. The claimant should avoid concentrated exposure to extreme cold, heat, wetness and humidity. He should avoid concentrated exposure to pulmonary irritant dust. The claimant should avoid all exposure to unprotected height, dangerous machinery, and uneven surfaces. The claimant will have 1 to 2 unplanned absences a month. The claimant is limited to no more than simple, short instructions and simple work related decisions with few work place changes (unskilled work). He is limited to only simple, work-related decisions with few work place changes (low stress). The claimant should have no work at fixed production rate.

(Tr. 99-101). Lawery worked full-time every year between 1994 and 2011, when he stopped working due to pain. (Tr. 26, 235-40, 263).

In November 2010, Lawery was treated for a two-week history of burning foot pain and "crampy leg pain." (Tr. 319-324). The attending physician thought his symptoms were "likely" related to diabetic neuropathy, and electrolyte deficiency, "versus a viral myositis." (Tr. 323). On January 12, 2011, Lawery went to an emergency room for groin/thigh pain, left more than right. (Tr. 347-49). Discharge diagnosis was "groin muscle strain"; an electrolyte abnormality was ruled out. (Tr. 349).

On April 11, 2011, Lawery was evaluated by orthopedic specialist, Dr. A. McMahan, for bilateral hip pain, particularly of the groin and thigh "pain with ambulation." (Tr. 360-61). Hip x-rays showed "severe degenerative joint disease bilateral hips with cystic formation on the left both acetabulum and femoral head." (Tr. 360). Dr. McMahan prescribed rehabilitation/physical therapy and Voltaren. (Tr. 361). On July 18, 2011, Lawery returned to the emergency room for severe bilateral thigh pain which he reported

interfered with his sleep and made him unable to stand or bear weight on his left side. (Tr. 332). The cause of pain was unclear; an ultrasound showed no blood clot and the lab work was normal. (Tr. 331). On July 21, 2011, Dr. McMahan diagnosed "severe" bilateral degenerative joint disease of the hips, performed bilateral hip injections and "discussed total hip replacement." (Tr. 345, 358).

On May 30, 2013, Alan M. Babb, MD, examined Lawery at the state agency's request. (Tr. 362-66). Dr. Babb diagnosed hip and thigh pain of unknown etiology, DMII and high cholesterol. He concluded that "[a] much more aggressive work-up is demanded. This is well beyond the scope of this exam" and recommended several tests to be performed. (Tr. 365).

On September 4, 2013, Lawery was evaluated at a free-clinic, Medical Outreach Ministries. He reported a two-year history of thigh soreness/stiffness, and associated 30-pound weight gain due to the resulting inactivity. He was diagnosed with hip disease, "congenital v. arthritis" and DMII. Diabetic medications were prescribed, labs ordered, and treating orthopedist, Dr. McMahan's records were requested. (Tr. 368, 370, 373). September 4, 2013, x-rays showed "advanced, severe bilateral hip osteoarthrosis" with "associated superolateral bilateral hip subluxation." (Tr. 75).

### VI. ISSUES

Lawery raises three issues on appeal:

A.  Whether the ALJ failed to fully and fairly develop the record.

B.  Whether the ALJ's Residual Functional Capacity finding is supported by the record.

C.   Whether the ALJ erred at Step-5 of the sequential evaluation of disability.

See Doc. 13 at p. 1.

## VII. DISCUSSION AND ANALYSIS

### A. Whether the ALJ failed to fully and fairly develop the record.

Plaintiff argues that ALJ failed to fully and fairly develop the record because the record does not contain ongoing treatment records from any primary care physicians or any specialists since 2011 and the consulting physician Dr. Alan M. Babb recommended additional tests be conducted to determine the cause of Lawery's thigh pain. However, the Court's own independent review of the record demonstrates that the record before the ALJ included medical records as follows: Plaintiff's November 2010 admission to Grady Hospital Emergency Department (Tr. 320-24); Plaintiff's July 2011 admission to Piedmont Hospital Emergency Department (Tr. 329-39); Plaintiff's January 2011 and July 2011 admissions to Emory University Hospital Emergency Department (Tr. 345-52); Plaintiff's April May and July 2011 visits to Resurgens Orthopaedics (Tr. 357-61); Plaintiff's May 30, 2013 consultative examination performed by Alan M. Babb, M.D. (Tr. 363-66); Plaintiff's September 2013, November 2013, February 2014, and May 2014 visits to Medical Outreach Ministries. (Tr. 368-80). In addition, the record contains Plaintiff's hearing testimony concerning his alleged impairments and functional capacity, as well as disability reports, a function report, and other documents Plaintiff provided. (Tr. 115-41, 251-312). The Court concludes that this record evidence was sufficient to allow the ALJ to make informed findings as to the severity of Plaintiff's impairments, Plaintiff's RFC, and Plaintiff's ability to perform his past work and other work during the period of December 1, 2011 through October 22, 2014. (Tr. 97-107).

Plaintiff also contends that the ALJ erred in failing to order additional testing or evaluation of Plaintiff as recommended by Dr. Babb. However, an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed

decision." *Ingram v. Comm'r of Soc. Sec.,* 496 F. 3d 1253, 1269 (11th Cir. 2007). Based upon the discussion above, the Court has concluded that the record was sufficient in the instant action for the ALJ to make an informed decision. Moreover, to obtain remand for further development of the record, Plaintiff must show that he was prejudiced by the ALJ's failure to develop the record. *Graham v. Apfel,* 129 F. 3d 1420, 1422 (11th Cir. l997). To determine whether remand is warranted, "the court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Id. at 1423. Plaintiff has not demonstrated that the gap in records of treatment from July 2011 to May 2013 resulted in any unfairness or prejudice to him. This is especially so since the most recent treatment records from 2014 indicated Lawery's diabetes was controlled with medication and he received "some relief" from medication of his arthritic hip and thigh pain. (Tr. 104, 380). Accordingly, the Court concludes that the ALJ fully and fairly developed the record in this case.

**B. Whether the ALJ's Residual Functional Capacity finding is supported by the record**.

Plaintiff argues that the ALJ's Residual Functional Capacity assessment is not supported by substantial evidence. The ALJ found, based on the record as a whole, that Plaintiff had the RFC to perform a reduced range of light work. (Tr. 101). In support of his RFC finding, the ALJ noted that the treatment records from the months leading up to Plaintiff's alleged disability onset date of December 1, 2011 indicated that Plaintiff had severe degenerative joint disease. Plaintiff was diagnosed with leg pain in July 2011and received a steroid injection in both hips in July 2011. (Tr. 103, 338, 357-60). The ALJ also noted that a July 2011 bilateral peripheral ultrasound showed no blood clot, Plaintiff's blood work was normal, and he was prescribed pain medication. (Tr. 103, 339). Moreover, the most recent treatment records from 2014 indicated Lawery's diabetes was controlled with medication and he received "some relief" from medication of his arthritic hip and

thigh pain. (Tr. 104, 380). The law is well-settled; "[a] doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." *Sheldon v. Astrue,* 268 F. App'x 871, 872 (11th Cir. 2008). Additionally, the ALJ was persuaded that Lawery's lack of treatment for his conditions during the relevant period suggested that his arthritis and diabetes were not disabling. Specifically, the ALJ noted the lack of medical records for the end of 2011 through 2012 and further noted that records reflected only two office visits for Plaintiff in the years 2013 and 2014. (Tr. 103-04). *See Castle v. Colvin*, 557 F. App'x 849, 851-53 (11th Cir. 2014) (Holding the ALJ's finding was supported by substantial evidence in part because Plaintiff's lack of treatment for knee pain suggested the knee pain was not severely limiting).

In making his RFC finding, the ALJ also considered Dr. Babb's May 30, 2013 consultative examination findings which indicated that although Plaintiff repeatedly reported pain in the anterior thighs, Plaintiff was in no acute distress, had no clubbing, cyanosis, or edema, and his peripheral pulses were intact. (Tr. 103, 363-64). Dr. Babb also indicated that the previous x-rays showed evidence of degenerative joint disease of the hips "but this was an otherwise healthy and thin 46-year-old male." (Tr. 103, 365). Although the ALJ noted that Dr. Babb questioned the underlying condition causing Plaintiff's hip and thigh pain and recommended more tests, (Tr. 103, 363-66), the mere diagnosis of a condition does not establish that Plaintiff had additional work limitations. *See Moore v. Barnhart,* 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005). The ALJ also noted that no treating or examining doctor found Plaintiff had limitations on his ability to work greater than those the ALJ determined in his RFC findings. (Tr. 105). *See Powell v. Comm'r of Soc. Sec.,* 571 F. App'x. 914, 917 (11th Cir. 2014)(Recognizing the ALJ properly noted that claimant "did not present any opinions from a treating or examining physician indicating that she was disabled or had limitations greater than those reflected in the RFC"). Accordingly, the Court

concludes based upon its independent review of the record that the record evidence as a whole supports the ALJ's finding that Plaintiff had the RFC to perform a reduced range of light work, despite the limitations cause by his impairments. (Tr. 101-06).

Additionally, Plaintiff argues that the ALJ's RFC is not supported by the record because the record contains no RFC assessment from a treating or examining physician. However, the law is well-settled; an ALJ's RFC finding is not required to be "underpinned by a medical source opinion." *Castle,* 557 F. App'x at 853-54. Indeed, the ALJ retains the sole responsibility for assessing a claimant's RFC based on all the relevant evidence in the record. *See Langley v. Astrue,* 777 F. Supp. 2d 1250, 1252-58 (N.D. Ala. 2011). Thus, the Court concludes that Plaintiff's argument to the contrary fails.

**C. Whether the ALJ erred at Step 5 of the Sequential Evaluation of Disability.**

Plaintiff argues that the VE's testimony identifying other work that Plaintiff could perform was inconsistent with the DOT. *See* Pl. Br. at 13-15. The ALJ specifically asked the VE whether all of his testimony was in accordance with the DOT, and the VE responded:

> Q. Okay. And has all your testimony today been in accordance with the DOT?
>
> A. Those areas covered by the DOT. The DOT doesn't address breaks, absences, need to raise one's leg to relieve pain or things like that. Doesn't address sit, stand option. So anything outside the DOT, I based [on] my knowledge, education and experience, Your Honor.

(Tr. 147). Thus, the ALJ fulfilled his responsibility to ask the VE about any possible inconsistency between his testimony and the information provided in the DOT, and the ALJ was not required to independently investigate the VE's testimony or further interrogate the VE about his testimony. *See Leigh v. Comm'r of Soc. Sec.,* 496 F. App.'x 973, 975 (11th Cir. 2012); *Jones v. Comm'r of Soc. Sec.,* 423 F. App'x 936, 939 (11th Cir.

2011) (Holding an ALJ is entitled to rely on VE's testimony, even if it were inconsistent with the DOT and was not required to seek further explanation.)

Plaintiff also argues that a conflict exists between the VE's testimony and the DOT because Plaintiff, who uses a cane, could not use his upper extremities in the manner required to perform the jobs the VE identified. *See* Pl. Br. at 13-15. However, to the extent there was any conflict; the ALJ properly relied on the VE testimony which "'trump[ed] any inconsistent provisions of the DOT." *Hurtado v. Comm'r of Soc. Sec.,* 425 F. App'x 793,795-96 (11th Cir. 2011) (Recognizing that even if there were inconsistencies between the VE's testimony and the DOT, the "ALJ did not err by relying on the VE's testimony because it 'trump[ed]' any inconsistent provisions of the DOT.") (Citation omitted). Accordingly, the Court concludes that the ALJ did not err at Step 5 of the Sequential Evaluation of Disability and substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled.

### VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision. A separate order will be entered.

DONE this 31st day of May, 2018.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE